**Carolyn Ruth DOW, Respondent**

v.

**James Arthur DOW, Appellant.**

No. 69057.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

Charles W. Medley, Farmington, for appellant.

Eric C. Harris, Flat River, for respondent.

WELLIVER, Judge.

Appellant, James Dow, appeals from the dissolution decree of the Circuit Court of St. Francois County, alleging unconscionability of the settlement agreement upon which the decree was based. The Court of Appeals, Eastern District, affirmed the circuit court and transferred the cause to this Court. Mo. Const. art. V, § 10.

I

On July 5, 1985, respondent, Carolyn Dow, filed a Petition for Dissolution of Marriage, together with an Entry of General Appearance[1] executed by James on July 2 and a Marital Settlement and Separation Agreement executed by the parties on June 28. *See* Appendix A. In short, the agreement gives Carolyn the marital home and furnishings, a 1977 pickup truck, and her personalty, gives James a 1984 car encumbered with debt and his personality, and denies both parties maintenance. The dissolution action went to trial on August 9, 1985. At trial, Carolyn testified concerning the execution and general terms of the settlement agreement. She stated that the agreement was fair and asked the court to approve the settlement. James was not present at the trial. The trial court found the marriage was irretrievably broken and ordered the marriage dissolved. The court also found that the settlement agreement was not unconscionable and ordered it approved. The Court of Appeals, Eastern District, affirmed the circuit court and transferred the case to this Court since it

saw its decision to be in conflict with other opinions of the courts of appeals.

II

Appellant's sole allegation is that the trial court had insufficient evidence upon which to base its finding of no unconscionability.

Court approval of settlement agreements in dissolution actions is governed by § 452.-325, RSMo 1986.[2] Section 452.325.2 provides that:

2. In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except terms providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence *produced by the parties*, on their own motion *or on request of the court*, that the separation agreement is unconscionable.

(Emphasis added.)

At least two decisions of the courts of appeals appear to hold that this statute imposes an affirmative duty upon the trial judge to investigate the economic circumstances of the parties in determining conscionability. *Block v. Block*, 593 S.W.2d 584 (Mo.App.1979); *Clapper v. Clapper*, 674 S.W.2d 656 (Mo.App.1984).

The statute does not explicitly require the trial court to investigate into the economic circumstances of the couple to determine conscionability. Rather, the statute provides that the terms of the agreement are binding on the court[3] unless it finds that economic evidence produced by the parties on their own motion, or requested

---

**1.** ENTRY OF GENERAL APPEARANCE, WAIVER OF PERSONAL SERVICE OF SUMMONS, AND CONSENT TO TRIAL AND ENTRY OF DECREE WITHOUT FURTHER NOTICE

Comes now Respondent, James Arthur Dow, and hereby acknowledges receipt of a true copy of Petitioner's Petition for Dissolution of Marriage, a true copy of which is attached hereto, and does hereby waive personal service of said summons in said action, and does hereby enter his general appearance in said cause for all

purposes, and does hereby consent that said cause may be set for trial and hearing without further notice, and without his presence or his attorney's presence, and its decree may be entered as to the Court seems just and proper. . . .

**2.** All statutory references herein are to RSMo 1986 unless otherwise indicated.

**3.** Since the parties have no children, custody and support is not involved.

by the court, demonstrates unconscionability.

The Commissioner's Note to § 306 of the Uniform Marriage and Divorce Act, 9A U.L.A. 137 (1979), which is nearly identical to § 452.325, explains the court's role in determining conscionability:

> In order to determine whether the agreement is unconscionable, *the court may look to the economic circumstances of the parties* resulting from the agreement, and any other relevant evidence. . . .

(Emphasis added.)

"[Section 452.325] *permits* the court to find the agreement unconscionable and, therefore, not binding." R. Fowler & J. Krauskopf, *Property Provisions,* 29 J. of Mo.Bar 508 (1973) (emphasis added). The very purpose of § 452.325 is "[t]o promote the amicable settlement of disputes between the parties to a marriage. . . ." § 452.325.1.

> This section entirely reverses the older view that property settlement agreements are against public policy because they tend to promote divorce. Rather, when a marriage has broken down irretrievably, public policy will be served by allowing the parties to plan their future by agreeing upon a disposition of this property.

Uniform Marriage and Divorce Act § 306 Commissioner's Note, 9A U.L.A. 136 (1979).

Interpreting the statute to mandate the court to investigate economic circumstances to determine conscionability would tend to deprive the parties of the ability to plan their own futures.

> The rule is well reasoned that persons must be able to separate amicably and divide their property without interference where such division is feasible. It is not the province of this Court to alter decisions and agreements made between husband and wife in the absence of compelling injustice.

*Miller v. Miller,* 189 Mont. 356, 616 P.2d 313, 318 (1980). *See also In re Marriage of Lorenzi,* 84 Ill.App.3d 427, 39 Ill.Dec. 754, 405 N.E.2d 507, 510 (1980). We see no danger in a settlement approval procedure which allows, but does not mandate, independent investigation by the trial judge, in his or her discretion.

We see no reason why the trial court which accepts the parties' allegations as to the irretrievability of the marriage should be forced to question the veracity of the same parties' allegations and agreements that their settlement agreement is equitable and not unconscionable.

■ By so saying, we in no way detract from or restrict the power given to the trial court to conclude that a settlement agreement is unconscionable, if the facts or circumstances of the particular case suggest such action on the court's part. We hold that § 452.325 allows, but does not require, the trial judge to investigate and examine the economic circumstances of the parties and other relevant factors in determining conscionability of the settlement agreement. To the extent that *Block, Clapper,* and other cases hold differently, they are overruled.

■ The trial judge did not err in determining that the settlement agreement was conscionable. We affirm the judgment of the circuit court.

All concur.

### APPENDIX A

### MARITAL SETTLEMENT AND SEPARATION AGREEMENT

. . . .

WHEREAS, the parties hereto desire to fully and finally settle all property rights, claims and interests of and between them, and make provisions regarding the disposition of their property and maintenance;

NOW, THEREFORE, for valuable consideration, each received by the other and for mutual promises herein contained, it is agreed as follows:

. . . .

2. **DIVISION OF MARITAL PROPERTY:** The parties hereto have, before the execution of this agreement, physically divided and taken into their respective per-

sonal possession substantially all personal property in which either party hereto has any interest and which is not hereinafter specifically referred to. Each party does hereby transfer and quit-claim unto the other party all of his or her interest in and to all of the personal property now in possession of the other party. It is understood and agreed that each of the parties shall retain all of the personal property that is in the possession of either of them as his or her sole and separate property, as the case may be. The parties make specific reference to the following division of personal property:

(a) Husband hereby releases and quit-claims to the Wife all of his right, title and interest in and to the following:

(1) All of Wife's clothing, jewelry and personal effects;

(2) 1977 Ford Pickup Truck;

(3) Real estate and marital home located at 103 Spring Street, Doe Run, Missouri, free of encumbrance;

(4) All household furnishings, contents, furniture and personalty now located in the marital home.

(b) Wife hereby releases and quit-claims to the Husband all of her right, title and interest in and to the following:

(1) All of Husband's clothing, jewelry and personal effects;

(2) 1984 Nissan Sentra, subject to note and security agreement in favor of Mercantile Bank of Farmington with monthly payments of $150.00 and with a principal balance of $5,100.00;

(3) All personalty now in Husband's possession.

(c) Each party shall herewith deliver to the other all property or documents evidencing ownership of property which, by the terms of this agreement, is to remain or become the property of the other.

. . . .

7. **NO MAINTENANCE:** The parties agree, after examining all relevant factors, including the situation of the parties at the present time, and considering the extent of the marital properties divided hereunder, that no maintenance is to be paid by either party for the support of the other, recognizing that, by this provision, they each waive the right to return to court to request and receive maintenance in the future.

. . . .

16. **VOLUNTARY AGREEMENT AND INVESTIGATION AND DISCLOSURE:** Each of the parties hereby affirms that they each are entering into this agreement freely and voluntarily; that they have ascertained and weighed all the facts and circumstances likely to influence his or her judgment herein; that they have given due consideration to such provisions in question; and that they clearly understand and assent to all of the provisions herein. The parties further warrant that they have each disclosed to the other the full extent of their respective properties and income, and each acknowledges that the other has made full disclosure thereof. Each party acknowledges that, in the negotiations and finalization of this agreement and acts and transactions referred to herein, each has made an independent investigation concerning the nature, extent and value of the real and personal property of the parties and that the provisions hereof are just, equitable and not unconscionable, and merit the approval and the confirmation of any court called to adjudge rights and relations.

. . . .

19. **EXECUTION:** Each party hereto acknowledges that each of them is making this agreement of his or her own free will and volition, and acknowledges that no coercion, force, pressure or undue influence has been used against either party in the making of this agreement, either by the other party to this agreement or by any other person or persons.

. . . .

IN WITNESS WHEREOF, the parties hereto set their hands, having read and fully understanding the provisions hereto. . . .